UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
DAMIEN MARTINEZ,

                  Plaintiff,          **MEMORANDUM AND ORDER**
                                    20-CV-6095 (KAM)

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
--------------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

        Plaintiff Damien Martinez appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") and thus not entitled to disability insurance benefits or supplemental security income under the Act. Plaintiff and the Commissioner have cross moved for judgment on the pleadings. For the reasons set forth below, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and this action is REMANDED for further proceedings consistent with this memorandum and order.

## BACKGROUND

        The parties have filed a joint statement of stipulated facts detailing Plaintiff's medical history and the administrative hearing testimony, which the court has reviewed and incorporates by reference. (*See* ECF No. 25 ("Stip.").) On August 25, 2017, Plaintiff filed applications for disability insurance benefits and

supplemental security income, alleging disability due to type 1 diabetes, post-traumatic stress disorder, anxiety, depression, high blood pressure, high cholesterol, and kidney damage. (ECF Nos. 29 to 29-1 (together, the "Administrative Record" or "A.R.") at 219-29, 248.) Plaintiff's applications were denied on January 3, 2018. (*Id.* at 120-28.) On February 21, 2018, Plaintiff requested a hearing before an administrative law judge. (*Id.* at 129-33.) ALJ Robert Schriver held a hearing on Plaintiff's claims on May 24, 2019, at which Plaintiff and a vocational expert testified. (*Id.* at 69-96.)

In a decision dated July 24, 2019, the ALJ concluded that Plaintiff was not disabled under the Act. (*Id.* at 39-51.) Plaintiff requested review of the ALJ's decision, which the Appeals Council granted on June 11, 2020. (*Id.* at 201-13.) On November 2, 2020, the Appeals Council issued a decision adopting the ALJ's findings and concluding that Plaintiff was not disabled under the Act. (*Id.* at 7-12.) The Appeals Council found that the ALJ committed a legal error by failing to enter into the record and consider records from Sparks Medical Center Van Buren regarding Plaintiff's inpatient treatment for diabetic ketoacidosis in January 2017. (*Id.* at 7-8.) After reviewing the records from Sparks Medical Center Van Buren, however, the Appeals Council concluded that the records did not provide a basis for changing the ALJ's decision. (*Id.*) Accordingly, the Appeals Council

2

affirmed the ALJ's finding that Plaintiff was not disabled under the Act. (*Id.* at 8.)  On December 3, 2020, Plaintiff filed the instant action seeking judicial review of the Commissioner's decision.

**LEGAL STANDARD**

Unsuccessful claimants for disability insurance benefits or supplemental security income may bring an action in federal court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. §§ 1383(c)(3), 405(g).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations and citation omitted).

"Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)). *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The

3

substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" (citations omitted)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (internal quotations omitted)).

To receive disability insurance benefits or supplemental security income, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3)(A).[1] A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.; see also Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The

---

[1] The statutory definitions of disability are identical under both Title II Disability Insurance and Title XVI Supplemental Security Income Programs. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a)(3). Moreover, "[c]ases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3)." *Lopez v. Comm'r of Soc. Sec.*, No. 18-cv-7564(JGK), 2020 WL 364172, at *1 n.1 (S.D.N.Y. Jan. 22, 2020).

impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 1382c(a)(3)(B).

The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of "disabled."  *See* 20 C.F.R. § 416.920.  The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 416.920(a)(4).  During this five-step process, the Commissioner must consider whether the combined effect of all of a claimant's impairments, including those that are not severe, would be of sufficient severity to establish eligibility for Social Security benefits.  20 C.F.R. § 416.923(c).

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations."  *Burgess*, 537 F.3d at 128 (internal quotations and citations omitted).  "However,

5

because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal quotations and citations omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform her past relevant work, is able to engage in gainful employment within the national economy [given her residual functional capacity, age, education, and work experience]." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2010) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

## THE APPEALS COUNCIL'S ADOPTION OF THE ALJ'S DISABILITY DETERMINATION

Applying the five-step sequential process described above, at step one the Appeals Council adopted the ALJ's finding that Plaintiff did not engage in substantial gainful activity on or after May 1, 2014, the alleged onset date. (A.R. at 8.)

6

At step two, the Appeals Council adopted the ALJ's finding that Plaintiff had the following severe impairments: bipolar disorder, post-traumatic stress disorder, diabetes mellitus, peripheral neuropathy, and asthma. (*Id.*) The Appeals Council also adopted the ALJ's finding that Plaintiff's diabetic retinopathy did not qualify as a severe impairment. (*Id.*)

At step three, the Appeals Council adopted the ALJ's finding that Plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The Appeals Council specifically adopted the ALJ's findings that Plaintiff's mental impairments did not meet or equal the criteria for listing 12.04, "Depressive, Bipolar, and Related Disorders," or listing 12.15, "Trauma and Stressor Related Disorders." (*Id.*) In particular, the Appeals Council found that Plaintiff had moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (*Id.* at 8-9.)

At step four, the Appeals Council adopted the ALJ's finding that Plaintiff was unable to perform his past relevant work as a sales attendant and a cashier. (*Id.* at 9.) The Appeals Council adopted the ALJ's finding that Plaintiff had the residual

7

functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[2] except that Plaintiff can perform only simple tasks; can make only simple work-related decisions; and can have no exposure to respiratory irritants. (A.R. at 9.)

At step five, the Appeals Council adopted the ALJ's finding that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC.  In adopting the ALJ's finding, the Appeals Council relied on the testimony of a vocational expert who testified that Plaintiff could perform occupations such as charge-account clerk, order clerk, and call-out operator.  (*Id.* at 10.)  Accordingly, the Appeals Council adopted the ALJ's finding that Plaintiff was not disabled under the Act and therefore was not entitled to disability insurance benefits or supplemental security income.  (*Id.*)

## DISCUSSION

## I.   The ALJ Failed To Adequately Explain His Reasons for Discounting The Opinions of Plaintiff's Treating Psychiatrist

Plaintiff argues that remand is warranted because the ALJ failed to adequately explain his decision to discount the

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

opinions of Plaintiff's treating psychiatrist, Dr. Faisal Chaudhry. (ECF No. 24 ("Pl.'s Mem.") at 22-23.) The court agrees.

### A. New Regulations Governing the Evaluation of Medical Opinion Evidence

The SSA adopted new regulations effective March 27, 2017, revising the standard for evaluating medical opinion evidence. *See* 20 C.F.R. § 416.920c. Because Plaintiff filed his claims on August 25, 2017, the new regulations apply.

Under the new regulations, the Commissioner no longer "defer[s]" or gives "controlling weight" to a claimant's treating medical sources. *Id.* § 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions, the Commissioner considers the following five factors: (1) supportability; (2) consistency; (3) the relationship of the medical source with the claimant (taking into account the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the relationship is an examining relationship); (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing [the] medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 416.920c(c).

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion. *Id.* § 404.1520c(a). With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the remaining factors. *Id.*

**B. Assessment of Dr. Chaudhry's Opinions**

On January 10, 2019, Dr. Chaudhry completed a form entitled "Physician's Report for Claim of Disability Due to Mental Impairment." (A.R. at 629-34.) Between June 26, 2017 and October 16, 2018, Plaintiff received weekly psychotherapy from Dr. Chaudhry and saw him every three months. (*Id.* at 629.) Dr.

10

Chaudhry noted that during Plaintiff's manic periods, he exhibited "insomnia, irritability, increased goal directed behavior . . . and racing thoughts." (*Id.* at 630.)  Dr. Chaudhry also noted that Plaintiff had a history of suicidal ideation and suicide attempts, fits of rage, difficulty concentrating, and distractibility. (*Id.*)

Dr. Chaudhry assessed that Plaintiff had slight limitations in his activities of daily living due to mania-induced overexertion and the physical side effects of Plaintiff's diabetes.  (*Id.* at 631.)  He assessed marked limitations in maintaining social functioning because Plaintiff becomes highly irritated due to his bipolar disorder, ADHD, and irregular blood sugar levels.  (*Id.* at 632.)  He assessed marked limitations in Plaintiff's concentration, persistence, or pace due to Plaintiff's ADHD.  (*Id.* at 633.)  He further noted that Plaintiff had experienced one or two episodes of decompensation.  (*Id.*)

On May 10, 2019, Dr. Chaudhry completed a psychiatric report.  (*Id.* at 662-67.)  Dr. Chaudhry assessed no restriction in activities of daily living, moderate difficulties in maintaining social functioning, and marked deficiencies in concentration, persistence, or pace.  (*Id.* at 663-64.)  He noted that Plaintiff's condition makes it difficult for him to follow through on tasks such as reading and responding to notices in a timely manner.  (*Id.* at 664.)  He indicated that Plaintiff's condition had not resulted

11

in any episodes of deterioration or decompensation in work or a work-like setting. (*Id.* at 665.) Dr. Chaudhry assessed that Plaintiff's mental condition was likely to persist at the level of severity described in the report, noting that Plaintiff had been "consistently symptomatic" and that "his issues seem chronic." (*Id.*) He assessed that Plaintiff was unable to make occupational adjustments. (*Id.* at 666.)

The ALJ concluded that Dr. Chaudhry's opinions were "not persuasive" because they were "provided in checkbox form with limited explanations." (*Id.* at 49.) In addition, the ALJ stated that Dr. Chaudhry's conclusions were "inconsistent with the record and not supported by the mental health treatment notes." (*Id.*) The ALJ did not specify how Dr. Chaudhry's opinions were unsupported by the record or mental health treatment notes.

### C. Analysis

The court concludes that remand is appropriate because the ALJ failed to adequately address the supportability and consistency of Dr. Chaudhry's opinions under the regulations. "Remand is required when the ALJ fails adequately to explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record." *Barnett v. Comm'r of Soc. Sec.*, 2022 WL 4096623, at *4 (E.D.N.Y. Sept. 7, 2022) (quotations and citation omitted); *see also, e.g.*, *Keeby v. Comm'r of Soc. Sec.*, 2022 WL 4451004, at *8 (E.D.N.Y. Sept. 23, 2022) ("An ALJ's failure

12

to properly consider and apply the requisite factors is grounds for remand."); *Santos v. Kijakazi*, 2022 WL 4354372, at (S.D.N.Y. Sept. 20, 2022) ("The failure to properly consider and apply supportability and consistency is grounds for remand." (quotations and citation omitted)).

With respect to the supportability factor, the ALJ in the instant case found in a conclusory fashion that Dr. Chaudhry's opinions were "not supported by the mental health treatment notes." (A.R. at 49.)  "Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021).  The ALJ did not explain, for example, "which parts of the [treatment notes]" failed to support Dr. Chaudhry's opinions.  *Keeby*, 2022 WL 4451004, at *8.  Similarly, with respect to the consistency factor, the ALJ conclusorily found that Dr. Chaudhry's opinions were "inconsistent with the record." (A.R. at 49.)  Again, the ALJ failed to adequately explain "which parts of the record were [in]consistent with" Dr. Chaudhry's opinions.  *Keeby*, 2022 WL 4451004, at *9.  In sum, the ALJ's "conclusory statements offer no insight into how well [Dr. Chaudhry] supported and explained [his] opinion, and are insufficient to withstand review." *Ayala v. Kijakazi*, 2022 WL 3211463, at *17 (S.D.N.Y. Aug. 9, 2022) (quotations and citation omitted); *see also, e.g.*, *Estrada v. Comm'r of Soc. Sec.*, 2022 WL

13

3337753, at *15 (S.D.N.Y. Aug. 13, 2022) ("Without a more fulsome explanation of why the ALJ rejected the opinions of [the plaintiff's] treating providers, the Court is not in a position to review whether the ALJ's conclusions are supported by substantial evidence." (quotations and citation omitted)).

The Commissioner argues that the ALJ adequately justified his decision to discount Dr. Chaudhry's opinions by explaining that the opinions were "provided in checkbox form with limited explanations." (*Id.* at 49; *see* ECF No. 27 ("Def's Mem.") at 7 & n.4.)   There is no rule, however, that "the evidentiary weight of a treating physician's medical opinion can be discounted by an ALJ based on the naked fact that it was provided in a check-box form." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022). "Rather, the critical inquiry is whether the opinion is supported by substantial evidence in the record and whether the ALJ has adequately articulated a basis for discounting or rejecting it." *Shadha A. v. Comm'r of Soc. Sec.*, 2022 WL 4591308, at *7 (W.D.N.Y. Sept. 30, 2022).   As explained above, the court finds that the ALJ did not articulate an adequate basis for discounting Dr. Chaudhry's opinions.   In addition, as Plaintiff notes (*see* Pl.'s Mem. at 22), Dr. Chaudhry did not simply check a box, but rather provided explanations for his opinions, as set forth above. *Compare, e.g., Cristian A.J. v. Comm'r of Soc. Sec.*, 2022 WL 623443, at *4 (S.D.N.Y. Mar. 3, 2022) (declining to remand where the treating

14

physician's opinion "was provided via a 'check-box' form *without a supporting narrative* and/or citations to the underlying record" (emphasis added)).

The court recognizes that, in limited circumstances, an ALJ's failure to adequately analyze the supportability and consistency factors may be considered a harmless error that does not require remand. *See, e.g.*, *Santos v. Kijakazi*, 2022 WL 4354372, at *7 (explaining that the court need not remand where "application of the correct legal principles to the record could lead only to the same conclusion" (citation omitted)). Here, however, the court finds that the record does not "compel only one conclusion." *Estrada*, 2022 WL 3337753, at *15. The court is not compelled to conclude that Dr. Chaudhry's opinions were inconsistent with the evidence in the record, for example, because the ALJ rejected other medical opinions on the ground that Plaintiff had *more severe* limitations than were specified in those other opinions. (A.R. at 48.) Accordingly, the court concludes that remand is warranted for the ALJ to adequately analyze the supportability and consistency of Dr. Chaudhry's opinions.

## II. The RFC Determination Was Not Supported By Substantial Evidence

Plaintiff also argues that remand is warranted because the ALJ's RFC determination, which was adopted by the Appeals

Council, was not supported by substantial evidence.  (Pl.'s Mem. at 17-18.)  Again, the court agrees.

"Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician." *Lao v. Comm'r of Soc. Sec.*, 2020 WL 4194210, at *3 (E.D.N.Y. July 21, 2020) (citation omitted).  "An ALJ commits legal error when he makes a [RFC] determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities." *Van Dyne v. Saul*, 2021 WL 1210460, at *15 (E.D.N.Y. Mar. 31, 2021) (citation omitted).  Although the ALJ may "choose between properly submitted medical opinions," he may not "set his own expertise against that of physicians who submitted opinions to him." *Ianazzi v. Comm'r of Soc. Sec.*, 2022 WL 4386835, at *5 (E.D.N.Y. Sept. 22, 2022) (quoting *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010)).

Here, the ALJ concluded that Plaintiff could perform sedentary work, "except that he can perform simple tasks only, make only simple work-related decision[s], and can have no exposure to respiratory irritants."  (A.R. at 44.)  In making this finding, however, it appears that the ALJ improperly "determined the RFC based on [his] own lay understanding of the medical records." *Latifu v. Comm'r of Soc. Sec.*, 2022 WL 2532193, at *19 (S.D.N.Y.

May 4, 2022).  As Plaintiff notes, the ALJ rejected – in whole or in part – *every* opinion in the record.  (*See* Pl.'s Mem. at 17-18.) Although the ALJ discounted several of the opinions because he concluded that Plaintiff had more significant limitations than were stated in the opinions (*see* A.R. at 47-49), the ALJ did not explain what those more significant limitations were, or explain why those more significant limitations failed to support Dr. Chaudhry's opinions.

In short, it appears that the ALJ rejected or limited every medical opinion before formulating Plaintiff's RFC based on his own interpretation of the medical data.  *See, e.g., Lee v. Saul*, 2020 WL 5362619, at *17 (S.D.N.Y. Sept. 8, 2020) ("Given the lack of any controlling medical opinion – or at least one that the ALJ did not largely discount – the ALJ has improperly filled this evidentiary void with his own medical judgment and interpretation of these records.").  Accordingly, remand is warranted because the court "is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data." *Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019); *see also, e.g., Pearson v. Comm'r of Soc. Sec.*, 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) ("[A]n ALJ's RFC determination must be supported by a medical opinion in the record at that time."); *Morse v. Saul*, 2020 WL 2781702, at *3 (W.D.N.Y. May 29, 2020) (remanding where the ALJ

"rejected every medical opinion and improperly substituted his own medical judgment over that of any physician").

III. **The ALJ Failed to Adequately Develop the Record**

For similar reasons, the court concludes that the ALJ failed to adequately develop the record. (*See* Pl.'s Mem. at 23.) "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess*, 537 F.3d at 128. "The duty to develop obligates the Commissioner to develop a complete medical record" that is "detailed enough to allow the ALJ to determine the claimant's RFC." *Dennis-Pendarvis v. Comm'r of Soc. Sec.*, 2022 WL 4641584, at *9 (E.D.N.Y. Sept. 30, 2022) (citations omitted). "Failing to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding for further findings." *Id.* (collecting cases); *see also, e.g.*, *Catalano v. Comm'r of Soc. Sec.*, 2022 WL 4539375, at *5 (E.D.N.Y. Sept. 28, 2022) (explaining that where "psychiatric impairments are at issue, an ALJ has a heightened duty to develop the record due to the difficulties associated with evaluating a mental illness' impact on a claimant's ability to function adequately in the workplace" (citation omitted)).

As noted above, the ALJ partially or completely rejected every opinion that he considered for reasons that reflect an inadequate development of the record. (A.R. at 47-49.)  With

18

respect to Plaintiff's physical impairments, for example, the ALJ found the opinion of Dr. C. Levit not persuasive because the record "establishe[d] greater physical limitations than those Dr. Levit specified." (*Id.* at 47; *see id.* at 48 (rejecting the opinion of Dr. Marisela Gomez because the record "establishe[d] many more physical limitations than those Dr. Gomez specified").)   With respect to Plaintiff's mental impairments, the ALJ found the opinion of Dr. Beth Ehrenpreis unpersuasive because Plaintiff's "psychological limitations [went] beyond [her] opinion." (*Id.* at 48; *see id.* (rejecting the opinion of Dr. E. Gagan because Plaintiff's "psychiatrist treatment records were not available at the time of review").)   Moreover, when rejecting the opinion of Dr. Jean-Etianne Thibaud, the ALJ specifically noted that she offered "no explanations that can be used to formulate the claimant's residual functional capacity." (*Id.* at 48.)   Thus, the ALJ "effectively discounted all of the listed medical opinions, leaving an evidentiary void in the record that necessitates remand." *Lee*, 2020 WL 5362619, at *16.

## IV.   The ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff also argues that the ALJ failed to properly assess his subjective complaints. (Pl.'s Mem. at 25-30.)   Because the court remands on the grounds described above, it need not reach this argument. *See, e.g.*, *Rodriguez v. Comm'r of Soc. Sec.*, 2021 WL 2219276, at *12 (E.D.N.Y. Mar. 29, 2021) ("Because the Court

remands for further consideration of the medical evidence, and because the ALJ based his assessment of Plaintiff's credibility on the consistency of his statements with the medical evidence, the Court will not address whether the ALJ properly evaluated Plaintiff's credibility."). On remand, the ALJ will have another opportunity to consider and explain Plaintiff's credibility after further developing the record and reevaluating the medical evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED**, Defendant's cross-motion for judgment on the pleadings in **DENIED**, and this case is **REMANDED** for further proceedings consistent with this memorandum and order. The Clerk of Court is directed to enter judgment accordingly and close this case.

**SO ORDERED.**

                                        Hon. Kiyo A. Matsumoto
                                        United States District Judge
                                        Eastern District of New York

Dated:    Brooklyn, New York
          October 12, 2022

20